UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| BONNIE DEHART, *Administratix of the Estate of Kevin Allen Hall*, | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 5:23-cv-00311-GFVT |
| v. | ) ) **MEMORANDUM OPINION** |
| MONTGOMERY COUNTY FISCAL COURT, *et al.*, | ) ) **&** ) **ORDER** |
| Defendants. | ) |

*** *** *** ***

This matter is before the Court upon Motions to Dismiss[1] filed by Defendants Ian Roberts, Courtney Rogers, Jessica Stipe, Jordan Brewer, Scott Ducker, Christopher Ingram, Myron Thornsbury, Michael Gabbard, Adam Grubb, Kevin Justice, and the Montgomery County Fiscal Court.  [R. 18; R. 23.]  For the reasons that follow, the motions will be **GRANTED**.

I

This action is brought by the Estate of Kevin Hall.  On June 6, 2022, Mr. Hall was booked into the custody of the Montgomery County Regional Jail.  [R. 17 at 9.]  The Estate alleges that, in the early morning hours of June 15, 2022, Mr. Hall told jail staff that he thought he was having a heart attack.  *Id*.  Mr. Hall was escorted to the jail's booking area, where he asked if he could call his mother.  *Id*.  Once in the booking area and sitting in a chair, Mr. Hall reached for something connected to the jail's computer booking system.  *Id*. at 9-10; [*see also* R. 20-1.]  What happened next is the central question to this suit.

The Estate alleges that Mr. Hall was slapped across the head with an open hand, and then

---

[1] Because the motions contain essentially the same arguments, the Court will consider them collectively.

slammed to the ground. [R. 17 at 10-11.] Mr. Hall was then placed into a restraining chair. *Id*. at 11. During the time in which he was in the chair, Mr. Hall was never medically evaluated to determine whether he was actually having a heart attack. *Id*. The Estate alleges that over the next twenty-four hours, Mr. Hall was tased in a closed cell, and on multiple occasions placed in another restraint device called a WRAP and had a spit hood placed on his head. *Id*. at 11-16. Early in the morning hours of June 16, jail staff checked on Mr. Hall and found him unconscious and non-responsive. *Id*. at 17. Efforts to revive Mr. Hall were unsuccessful, and he was pronounced dead at 6:00 a.m. *Id*.

Mr. Hall's Estate alleges numerous federal and state law claims against a plethora of defendants, which include jail guards, medical staff, the Montgomery Count Fiscal Court, and the private corporation responsible for the medical staff at the jail. Defendants Ian Roberts, Courtney Rogers, Jessica Stipe, Jordan Brewer, Scott Ducker, Christopher Ingram, Myron Thornsbury, Michael Gabbard, Adam Grubb, Kevin Justice, and the Montgomery County Fiscal Court have moved to dismiss the Estate's Amended Complaint pursuant to Rule 12(b)(6). The matter is ripe for review.

## II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id.*

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v.*

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

A

i

The Court turns first to the Estate's § 1983 claims. In order to state a § 1983 claim, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983. The doctrine of qualified immunity, however, protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity claims demand a two-step analysis. First, "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the Court must determine whether the right was "clearly established." *Id*. The Court may address the two-step analysis in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Defendants' primary argument is that the Estate insufficiently pleads a

3

§ 1983 claim because the Amended Complaint fails to allege particular facts that demonstrate what each individual defendant did to violate Mr. Hall's constitutional rights.

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).  The Court must, therefore, "analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant." *Id*.

Here, the Estate alleges three claims under § 1983:  (1) Deprivation of Civil Rights for Unreasonable Search and Seizure and Excessive Force, (2) Deliberate Indifference, and (3) liability of supervisory defendants and the Montgomery County Fiscal Court under *Monell Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Upon review of the Amended Complaint, it is apparent to the Court that the first two claims do not describe with any particularity which individuals deprived Mr. Hall of his constitutional rights.  The Estate alleges that "the Defendants" did this and that "the Defendants" did that, but do not specify which Defendants did what and when.  The factual background portion of the Amended Complaint does not provide the needed specificity either.  Throughout its recitation of the events giving rise to its claims, the Estate ascribes certain actions to "MCRJ deputies" and MCRJ staff."  [*See* R. 17.]  But only Paragraph 31 attributes any specific actions to particular defendants, when it alleges that Defendants Rogers and Ducker helped "violently slam" Mr. Hall to the ground.

This grouping of Defendants into one large gumbo pot will not do because it fails to provide the Defendants with adequate notice.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250

4

(10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); s*ee also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the] minimum standard" that "a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." (internal quotation marks omitted)).  The Estate avers that "[o]nce discovery takes place, all the individual Defendants in the videos will be identified and held accountable for each instance of excessive force they unlawfully used against Mr. Hall." [R. 19 at 10.]  But the Court is unconvinced by the Estate's argument that discovery will cure the pleading deficiency.

It is true that "courts are disinclined to dismiss complaints that fail to allege specific conduct by each officer when the officers' actions have made them impossible to identify." *Greer v. City of Highland Park*, 884 F.3d 310, 316-17 (6th Cir. 2018).  But this case is not one where the individual defendants are impossible to identify.  *Cf. Burley v. Gagacki (Burley I)*, 729 F.3d 610, 622 (6th Cir. 2013) (upholding denial of qualified immunity because the defendants were present at the search and plaintiffs were unable to distinguish which officers entered their home when "the officers wore black clothing and face masks, with the intent to conceal their identities, and refused to provide their names when asked"); *Rauen v. City of Miami*, No. 06-21182-CIV, 2007 U.S. Dist. LEXIS 14931 at *4 (S.D. Fla. Mar. 2, 2007) (district court did not dismiss a complaint where the officers involved in the events giving rise to Plaintiffs' claims dressed in identical riot gear uniforms with the word "police" on them, covered their faces with

5

face shields, and failed to identify any agency or personal identification on their uniforms).  The Estate does not even argue that the identities of individual officers are impossible to ascertain.  Here, the Estate admits that "[t]here are hours upon hours of jail video evidence in this case." [R. 19 at 10.]  Individual faces can be clearly seen, and there is no attempt by the jailers to hide their identities.  The Estate has readily relied on these jail videos and certain incident reports, with both sources cited throughout the Amended Complaint.  Yet, the Estate failed to attribute any particular acts to Defendants Roberts, Ingram, Brewer, Thornsbury, Stipe, Gabbard, Grubb, and Justice.  For that reason, Counts One and Two against those Defendants cannot succeed.

  As to Defendants Ducker and Rogers, Counts One and Two against them will be dismissed too.  The Fourth Amendment prohibits unreasonable searches and seizures.  But the Fourth Amendment does not apply to incarcerated individuals.  *Brock v. Martin*, Civ. No. 5:15CV-P83-TBR, 2015 U.S. Dist. LEXIS 116886 at *9 (W.D. Ky. Sep. 2, 2015) (citing *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("recognizing that the Supreme Court 'confirmed a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration'"); *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 718 (W.D. Pa. 2007) ("finding that the plaintiff was not 'seized' for purposes of the Fourth Amendment since he was incarcerated at the time the alleged wrongful events took place")).  Thus, any Fourth Amendment claim against Ducker and Rogers cannot stand.

  As for the Estate's deliberate indifference claim, it arises from the Fourteenth Amendment, not the Eighth Amendment, because Mr. Hall was a pretrial detainee.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 398-402 (2015).  Thus, a different rubric is employed in analyzing a pretrial detainee's deliberate indifference claim.  *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315 (6th Cir. 2023).  To succeed on a deliberate indifference claim, the Estate must show

6

(1) that Mr. Hall had a sufficiently serious medical need and (2) that each defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. at 317 (citations and internal quotations omitted).

 Here, the Amended Complaint fails to allege that Ducker and Rogers had any knowledge of his medical condition. It is true, as the Estate argues, that the Amended Complaint clearly states that Mr. Hall told MCRJ jail staff that he thought he was having a heart attack. [R. 19 at 13.] The Estate further argues that Mr. Hall's communication was "documented and entered into the jail's incident report / record system on June 15, 2022, at 6:01 a.m. which put the entire jail on notice that Mr. Hall thought he was having a heart attack." *Id*. But the knowledge component of the deliberate indifference rubric is subjective. Hence, constructive notice of a detainee's health risk is not enough. *See Farmer v. Brennan*, 511 U.S. 825, 840-41 (1994). The Amended Complaint does not allege that Ducker nor Rogers knew or had reason to know of Mr. Hall's supposed medical need, and there are no facts alleged that would lend support to that notion. Thus, the deliberate indifference claim against Ducker and Rogers must also be dismissed.

 The Estate's excessive force claim against Ducker and Rogers fails too. To succeed on an excessive force claim, the Estate must show "that the force purposely or knowingly used against [a pretrial detainee] was objectively unreasonable." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023) (quoting *Kingsley*, 576 U.S. at 396-97). "The reasonableness of the force turns on the facts and circumstances of the particular case." *Id*. "A court must make this determination from the perspective of a reasonable [official] on the scene, including what the [official] knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

7

The Estate alleges that co-Defendant Adkins James Adkins violently slammed Mr. Hall to the ground "with the help of Defendant Rogers and Defendant Ducker." [R. 17 at 11.] But Rogers and Ducker refute that allegation. They point out that the Estate heavily relies on jail surveillance video. [R. 20 at 4.] And where a plaintiff's complaint implicitly relies on videos by recounting facts only known to him by watching the videos, a Court may consider the videos at the motion to dismiss stage. *See Bell v. City of Southfield, Mich.*, 37 F.4th 362, 364 (6th Cir. 2022) (Where a video is already in the record, "it makes little sense to waste time and effort by ignoring the videos' contents."); *see also Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (where the Sixth Circuit considered video at the motion to dismiss stage) (citing cases)). That said, the Court's reliance on videos is still limited at this stage. *Bell*, 37 F.4th at 364. If there is a factual dispute between the parties, the Court can "only rely on the videos over the complaint to the degree the videos are clear and 'blatantly contradict[]' or utterly discredit[]' the plaintiff's version of events." *Id*. (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Otherwise, the Court must accept the plaintiff's allegations as true. *Id*.

Here, the Court agrees with Rogers and Ducker. Upon review of the video evidence, it is apparent that Rogers and Ducker did not engage with Mr. Hall until Mr. Hall was already on the ground. [*See* R. 20-1 (conventionally filed).] Thus, the Estate's version of the facts, at least as far as alleging that Rogers and Ducker helped their fellow jailer "slam [Mr. Hall] to the ground", is implausible and cannot support an excessive force claim.

ii

The Estate also alleges a *Monell* claim against the Montgomery County Fiscal Court, Southern Health Partners, Inc., Roberts, Gabbard, Grubb, and Unknown Defendants. "[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously

8

liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted and internal quotation marks omitted). "Instead, a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 692). Because, however, the Estate has failed to adequately plead that any of Mr. Hall's constitutional rights were violated, there can be no recovery under a *Monell* theory. Thus, the Estate's *Monell* claim will be dismissed too.

**B**

Having considered the Estate's federal claims, the Court turns now to the state law claims. The Defendants urge the dismissal of the Estate's claims arising under state law on various grounds. A district court may, however, "decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction…." 28 U.S.C. § 1367(c)(3). Where, as here, the Court has dismissed the Estate's federal claims early in the proceedings, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. *See Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 88 (2022); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (noting that "[a]fter a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims.") This way of proceeding will provide the Estate flexibility in determining whether to cure its deficient pleading and refile in federal court or to forego its federal claims altogether and seek redress in state court.

9

## III

Kevin Hall's death is a tragedy. His Estate is entitled to seek redress from those who it believes might be at fault. But to do so, the Estate must adequately plead its claims. Here, the Estate failed to meet its pleading burden for its federal claims. For that reason, and because exercising supplemental jurisdiction over the Estate's state law claims is unwise, the Estate's current action must be dismissed. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Motions to Dismiss at **Record 18** and **Record 23** are **GRANTED**;

2. The Motion to Dismiss at **Record 10** is **DENIED as moot**; and

3. The Estate's Amended Complaint [**R. 17**] **SHALL** be dismissed **without prejudice**.

This the 30th day of August 2024.

Gregory F. Van Tatenhove
United States District Judge